1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, | CASE NO. 11cr794-MMA-2 |
| 12                          Plaintiff, | |
| 13       vs. | **ORDER DENYING DEFENDANT's MOTION TO SUPPRESS** |
| 14 | [Doc. No. 5] |
| 15  LUIS OSVALDO TORRES PIMENTAL (02), | |
| 16                          Defendant. | |

17      On March 2, 2011, Defendant Luis Osvaldo Torres Pimental ("Defendant") was charged in a

18  two count indictment with conspiracy to import marijuana in violation of 21 U.S.C. §§ 952, 960, and

19  963, and importation of marijuana and aiding and abetting in violation of 21 U.S.C. §§ 952 and 18

20  U.S.C. § 2.  On March 8, 2011, Defendant entered a plea of not guilty to both charges.  The matter is

21  currently before the Court on Defendant's motion to suppress statements made to federal agents

22  approximately 48 hours after his arrest.  *See* Doc. No. 5.  On May 31, 2011, the Court held an

23  evidentiary hearing.  Having considered the submissions of the parties, the testimony of witnesses,

24  and the oral arguments of counsel, the Court **DENIES** the motion to suppress.

25                                    RELEVANT FACTS

26      On January 14, 2011, at approximately 9:25 a.m., Defendant approached the San Ysidro Port

27  of Entry as a passenger in a Dodge Durango.  In the pre-primary area, a Canine Enforcement Officer

28  inspected the Durango, and his canine alerted on the vehicle.  Subsequent to primary and secondary

1   inspection, officers recovered 37 packages of marijuana totaling 71.25 kilograms.  Defendant was

2   taken into custody and escorted to the holding cells in the security office at the Port of Entry.  At

3   approximately 9:30 a.m., Agent Aradanas advised Defendant of his *Miranda* rights.  At

4   approximately 11:54 a.m., Defendant invoked his right to an attorney.  Agent Aradanas stopped

5   questioning Defendant and informed him that an attorney would not be meeting with him while he

6   was at the Port of Entry.  Agent Aradanas signed a complaint on January 14, 2011, at approximately

7   5:00 p.m., and United States Magistrate Judge Peter C. Lewis approved the complaint on the same

8   day at 8:14 p.m.  Defendant remained in custody at the Port of Entry for almost 48 hours because of

9   a lack of bed space at the federal facility in downtown San Diego ("MCC").

10        On the morning of Sunday, January 16, 2011, Agent Aradanas transported Defendant's co-

11   defendant in a vehicle from the Port of Entry to the MCC, while Agent Sabas Torres

12   contemporaneously transported Defendant from the Port of Entry to MCC in a separate vehicle.

13   Agent Torres and Defendant were the only two individuals in the vehicle during the 15 to 20 minute

14   trip to MCC.  Agent Torres testified that he and Defendant spoke to one another during the car ride.

15   Defendant initiated communication with Agent Torres by asking Agent Torres "how much time he

16   was going to get."  Agent Torres advised Defendant that he did not know the facts or details of

17   Defendant's case and did not know what his likely sentence would be.  Agent Torres spoke to

18   Defendant about factors that impact sentencing generally, including the complicated point system,

19   criminal history, declarations given at the time of arrest, case agent reports, and government

20   recommendations.  Agent Torres told Defendant that it can be difficult for an agent to talk to a

21   defendant after he is appointed counsel.  Agent Torres commented to Defendant that people make

22   mistakes, and that it is part of life.  Agent Torres testified that his conversation with Defendant

23   during transport to MCC was not calculated to result in Defendant making incriminating statements.

24        As they were approaching MCC, Defendant then asked if he could speak with Agent

25   Aradanas.  Agent Torres advised Agent Aradanas, and she approached Defendant and asked him

26   "what's up?"  Defendant asked Agent Aradanas if it was too late to make a statement and she told

27   him "no, go ahead."  Defendant then asked Agent Aradanas what she wanted to know and told her to

28   ask him questions.  Agent Aradanas did not advise Defendant of his *Miranda* rights at that time.

11cr794

1    She asked Defendant how much he was going to get paid; he replied $1500.  She asked him where

2    he was going; he replied Lynwood (California).  She asked him who hired him; he replied Ruben.

3    To her recollection, Agent Aradanas asked Defendant if he knew what was in the car; he replied

4    marijuana.  She then advised Defendant to tell his attorney that he wanted to speak to her, and she

5    escorted Defendant into MCC for processing.

6         Defendant filed a declaration in support of the motion to suppress, in which he states that

7    during his transport to MCC, Agent Torres talked about, *inter alia*, "how much better it is for

8    defendants if they make a statement and how they get less time."  *See Def. Decl'n.* ¶ 14.  Defendant

9    also states that "because of what Agent Torres was saying I felt I had to make a statement admitting

10   guilt or else I was going to have to stay in jail for a long time."  *Id.* ¶ 15.

11                                    DISCUSSION

12        *1.    Miranda Waiver*

13        Defendant argues that Agent Torres improperly interrogated him after he invoked his

14   *Miranda* rights by engaging in what has been termed as the "functional equivalent of interrogation."

15   The "functional equivalent of interrogation" is "any words or actions on the part of the police (other

16   than those normally attendant to arrest and custody) that the police should know are reasonably

17   likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291,

18   301 (1980).  Defendant asserts that Agent Torres made comments to him during the car ride to MCC

19   with the purpose of eliciting an incriminating response from Defendant.  *See United States v. Foster*,

20   227 F.3d 1096, 1103-1104 (9th Cir. 2000) (indirect comments can constitute interrogation); *United*

21   *States v. Padilla*, 387 F.3d 1087, 1093 (9th Cir. 2004) (the statement that it was defendant's "last

22   chance to cooperate" was the functional equivalent of interrogation).  Defendant further argues that

23   even if his exchange with Agent Torres is not considered an interrogation, Agent Aradanas also

24   interrogated Defendant in violation of his *Miranda* rights.

25        An arrested person has the right to have counsel present during questioning, and to have

26   police explain this right to him before any interrogation begins.  *Miranda v. Arizona*, 384 U.S. 436,

27   469-73 (1966).  Under *Miranda*, a person may invoke his right to counsel at any time after being

28   taken into custody, so long as it is in the context of an imminent custodial interrogation.  *Miranda*

1 states "if the individual indicates in any manner, at any time prior to or during questioning, that he

2 wishes to remain silent, or if he states that he wants an attorney, the interrogation must cease." *Id*. at

3 473-474.  The parties do not dispute that Defendant invoked his right to counsel on Friday, January

4 14, 2011 at 11:54 a.m.

5       The assertion of the right to counsel is a "significant event" that calls for the end of

6 interrogation until counsel has been made available to the person in custody, unless the accused

7 himself initiates further communication, exchanges, or conversations with the police. *Edwards v.*

8 *Arizona*, 451 U.S. 477, 484-85 (1981).  Any statements a suspect makes after requesting an attorney

9 and before being provided with one are not admissible unless it is clear that the suspect, and not the

10 police, initiated the dialogue.  *Id.* at 485-87.  A statement made by a suspect to officers after the

11 suspect's invocation of his right to counsel constitutes an "initiation" of further discussion under

12 *Edwards* when it "evince[s] a willingness and a desire for a generalized discussion about the

13 investigation." *Oregon v. Bradshaw*, 462 U.S. 1039 (1983) (plurality opinion) (holding that there

14 was no violation of *Edwards* where an officer began questioning after a suspect, who had invoked

15 his right to counsel, asked "Well, what is going to happen to me now?").  A defendant may change

16 his mind and initiate communication; it is a factual question whether that has occurred.  *United*

17 *States v. Michaud*, 268 F.3d 728 (9th Cir. 2001).

18       A careful review of Defendant's declaration demonstrates that he does not directly challenge

19 Agent Torres' testimony that Defendant initiated the conversation during transport to MCC.  Agent

20 Torres testified that Defendant initiated the conversation by asking him how much time he was

21 going to get.  The Court finds Agent Torres to be a credible witness.  In addition, the Court finds that

22 Agent Torres and Defendant engaged in a mutual conversation, initiated by Defendant, during the

23 car ride to MCC.  There is no evidence before the Court that Agent Torres interrogated Defendant,

24 or that Agent Torres conversed with Defendant for the purpose of eliciting an incriminating

25 statement.  Agent Torres did not violate Defendant's *Miranda* rights.

26       Defendant asked to speak to Agent Aradanas, thereby initiating communication with her as

27 well.  This fact is not in dispute.  However, Defendant argues that Agent Aradanas was obligated to

28 advise him of his *Miranda* rights again prior to questioning him at MCC because it had been two

days since he had been so advised at the Port of Entry.  The Ninth Circuit has held repeatedly that

the  passage of time is not necessarily sufficient to demonstrate that the effectiveness of the earlier

warning was diminished.  *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1130 (9th Cir.

Or. 2005) (holding "that the failure to re-administer warnings on the second day does not

automatically render any of the statements made that day inadmissible"), citing *United States v.*

*Andaverde*, 64 F.3d 1305, 1313 (9th Cir. 1995) (approving a one day lapse); *Puplampu v. United*

*States*, 422 F.2d 870 (9th Cir. 1970) (per curiam) (approving a two day lapse); *Maguire v. United*

*States*, 396 F.2d 327 (9th Cir. 1968) (finding a warning given three days earlier was adequate).

Here, the 48 hour lapse between Defendant's statements at MCC and his *Miranda* warning

does not alone render Defendant's statements inadmissible, and other factors support a finding that

his *Miranda* warning was not so stale as to be diminished in effectiveness.  For instance, Defendant

asked to speak to Agent Aradanas specifically, the same agent who advised him of his *Miranda*

rights at the Port of Entry.  Defendant understood those rights and did not hesitate to assert them in

Agent Aradanas' presence and invoke his right to counsel.  In addition, Agent Torres testified that

he warned Defendant as they arrived at MCC, and before Defendant spoke with Agent Aradanas,

that anything he may say to the agents had to be voluntary.  As to this last point, Defendant argues

that even if the actions by Agents Torres and Aradanas did not constitute interrogation, the Court

must suppress his statements on grounds that he made them involuntarily.

Of course, a defendant can establish a constitutional violation by showing that a confession

was involuntary.  *Dickerson v. United States*, 530 U.S. 428, 432 (2000).  When a suspect waives

previously invoked rights by reinitiating a conversation with law enforcement officers, the waiver

must be knowingly and intelligently made, based on a totality of the circumstances.  *Oregon v.*

*Bradshaw*, 462 U.S. 1039, 1045-46 (1983).  The government must establish the voluntariness of a

defendant's statements by a preponderance of the evidence.  *United States v. Kelley*, 953 F.2d 562,

564 (9th Cir. 1992).  The test is whether, considering all the circumstances, the government obtained

the statement by physical or psychological coercion or by inducement so that the suspect's will was

overcome.  *United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir. 2001), citing *Haynes v.*

*Washington*, 373 U.S. 503, 513-14 (1963).  Courts consider the defendant's age, education, the

11cr794

1    nature of any questioning, and the use of any physical punishment such as the deprivation of food or

2    sleep to determine voluntariness. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003),

3    citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

4           There is nothing in the record indicating that Defendant was coerced, either psychologically

5    or physically, into answering Agent Aradanas' questions.  Likewise, there is no evidence before the

6    Court to suggest Defendant was threatened, harassed, or induced into making statements to Agent

7    Aradanas.  In his declaration, Defendant states that the holding cell at the Port of Entry was cold and

8    he had to sleep on the floor.  However, he does not claim to have been purposefully deprived of

9    sleep, food, or any other essential needs while waiting transport to MCC.  And although his

10   conversation during the car ride with Agent Torres may have inspired him to cooperate with Agent

11   Aradanas, there is nothing in the record to suggest that Agent Torres said or did anything to render

12   Defendant's decision involuntary.  The Court finds that Defendant's statements were voluntary.

13   Looking at the totality of the circumstances, the agents' actions were not threatening, intimidating,

14   improperly influential, or psychologically coercive. *Colorado v. Spring*, 479 U.S. 564, 573 (1987).

15          *2.    Delay in Presentment*

16          Defendant argues that his statements must be suppressed because they were made more than

17   six hours after his arrest and the government failed to arraign him without unnecessary delay as

18   required by Federal Rule of Criminal Procedure 5(a)(1)(A), which states that "[a] person making an

19   arrest within the United States must take the defendant without unnecessary delay before a

20   magistrate judge. . ."  Although Defendant was taken into custody on Friday, January 14, 2011 at

21   approximately 9:30 a.m., his initial appearance was not held until Tuesday, January 18, 2011.

22          The admissibility of Defendant's statements is governed by 18 U.S.C. § 3501(c), which

23   creates a "safe harbor" for voluntary confessions made within six hours of an arrest.[1]  With respect

24   ────────────

25          [1] Section 3501(c) provides: "In any criminal prosecution by the United States . . . a confession made or given by a person who is a defendant therein, while such person was under arrest . . . shall not

26   be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the

27   confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest . . . : Provided, That the time limitation contained in this subsection

28   shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge

1   to voluntary confessions made more than six hours after an arrest but before presentment to a

2   magistrate judge, the admissibility of the confession turns on whether the delay in presentment was

3   unreasonable or unnecessary.  The Supreme Court recently held that, in evaluating a motion to

4   suppress based on a delay in presentment, "[i]f the confession occurred before presentment and

5   beyond six hours . .  the court must decide whether delaying that long was unreasonable or

6   unnecessary . . . and if it was, the confession is to be suppressed."  *Corley v. United States*, 129 S.Ct.

7   1558, 1571, 173 L. Ed. 2d 443 (2009).  This is true even if the confession was voluntary.  *Id.* at

8   1563.  The primary purpose of the prompt presentment requirement is to prevent law enforcement

9   officials from secretly detaining individuals for lengthy periods and presenting them to a magistrate

10   only after obtaining a confession.  *Id.* at 1562-63.

11        The Ninth Circuit has not hesitated to exclude a defendant's statements where presentment

12   was delayed for the purpose of  interrogation.  *United States v. Liera*, 585 F.3d 1237 (9th Cir. 2009).

13   However, the circuit court has also recognized that magistrate judges are not expected to be

14   available over the weekend hours, *United States v. VanPoyck*, 77 F.3d 285, 289 (9th Cir. 1996)

15   (holding that weekend delay due to the unavailability of a magistrate judge is not unreasonable), and

16   that "administrative delays due to the unavailability of government personnel and judges necessary

17   to completing the arraignment process are reasonable and necessary and therefore do not violate the

18   prompt presentment requirement of Rule 5(a)."  *United States v. Garcia-Hernandez*, 569 F.3d 1100,

19   1106 (9th Cir. 2009) (holding that delay caused by a shortage of personnel necessary to process the

20   defendant and determine whether he should be criminally charged was reasonable and necessary).

21        The government argues that there was no violation of Rule 5 in this case because Defendant

22   was arraigned at the earliest possible time, considering his arrest was on a Friday before a three-day

23   weekend, and the magistrate judge was presented with the complaint Friday evening after 5:00 p.m.,

24   and did not sign it until after 8:00 p.m.  The Court agrees.  *See United States v. Redlightning*, 624

25   F.3d 1090 (9th Cir. 2010) (holding overnight presentment delay was reasonable when "no magistrate

26   judge was reasonably available until 2:30 p.m. on [the following day], when the next arraignment

27

28   or other officer."  18 U.S.C. § 3501(c).

calendar commenced"); *United States v. Murray*, 197 F.R.D. 421, 423 (S.D. Cal. 2000) (availability of magistrate judge can be a factor in determining whether delay was reasonable). There is nothing in the record to suggest that the delay in arraignment was deliberate, and it was certainly not designed to obtain Defendant's confession, as he invoked his right to counsel and agents did not question him again until he reinitiated communication with Agent Aradanas. *See United States v. Padilla-Mendoza*, 157 F.3d 730, 732 (9th Cir. 1998). Here, the delay was clearly due to the court's schedule, was not unreasonable or unnecessary under the circumstances, and does not compel the suppression of Defendant's statements.[2]

CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's motion to suppress.

**IT IS SO ORDERED**.

DATED: June 16, 2011

Hon. Michael M. Anello
United States District Judge

---

[2] Monday, January 17, 2011, was a federal holiday and the courts were closed.

11cr794